GULOTTA, Judge.
Defendants, appealing, claim an $18,-000.00 general damage award for a “garden variety soft-tissue injury” of the neck and back “of several months duration” is excessive.
This matter was submitted on plaintiff’s testimony and that of an investigating officer, together with a hospital report and reports of an orthopedic surgeon and a neurologist.
In written reasons, the trial judge concluded that plaintiff had sustained various injuries, “the most serious being a severe cervical strain which caused him to miss a substantial amount of work and incur various medical expenses”. He awarded the following special damages, which are not in dispute.
Doctor Bills $960.00
Auto Rental 586.52
Pharmacy and Medication 89.23
Hospital Expenses 256.50
Lost wages 10,625.00
TOTAL— $12,517.25
Finally, the trial judge concluded that the injuries were “painful” and of a “constant nature”.
Joseph Porrovecchio, forty-three years of age at the time of the September 20, 1979 accident, sustained head, neck, shoulder and lower back injuries when his automobile was rear-ended by a truck driven by defendant, Larry J. Adler. According to Por-rovecchio’s testimony, within “a couple of hours” after the accident, he went to the emergency room at Jo Ellen Smith Hospital because of headaches and back pain. Following examination, a “neck brace” was prescribed, and plaintiff was released the same day.
On September 25, 1979, plaintiff saw an orthopedist, Dr. R.E. Horn, Jr., who found decreased range of motion of the cervical spine with spasm and tenderness in neck and shoulder muscles on both sides. X-rays of the cervical spine were negative. Dr. Horn’s diagnosis was “cervical strain”. Pain killing medication was prescribed with instructions for “mild neck exercises”.
On September 26, plaintiff saw Dr. Horn again with continued complaints of pain and a more potent pain reliever was prescribed. On October 12,1979 plaintiff complained to Dr. Horn of “shock-like” pain radiating down the left arm and was re *989 ferred to Dr. Carl F. Culiechia, a neurosurgeon. On an October 16, 1979 visit, Dr. Horn noticed decreased range of motion of the cervical spine and prescribed cervical traction for fifteen-minute intervals three times a day.
Dr. Horn again discerned slight decreased range of motion of cervical spine on October 30, 1979 when plaintiff complained of pain at the base of the neck and headaches. Porrovecchio was sent to “physiotherapy for intermittent cervical traction”.
On December 1, 1979, the doctor noted that Porrovecchio continued to have “occipital headaches”. Continued complaints of headaches were noted by Dr. Horn on December 4, 1979 and February 1, 1980. According to Dr. Horn, plaintiff can anticipate occipital headaches and minor aggravating pains in the cervical region.
In an October 4, 1979 report, Dr. Culicc-hia, the neurosurgeon, stated that plaintiff had complained of headaches, pain and soreness over the left side of the neck, extending from the head and left shoulder, and discomfort in the lower back. Examination of the neck showed limitation of motion only in the extreme when turning the head to either side. X-rays showed no abnormality, and this physician concluded that plaintiff was not suffering from any neurologic injury or disease. It was Dr. Culicehia’s diagnosis that plaintiff had sustained a “slight cerbroconcussion”. Although plaintiff again saw this physician and expressed complaints of pain in the left occipital region, the doctor indicated in an October 11, 1979 report that the neurologic examination was normal. Medication was prescribed to relieve plaintiff’s headaches and muscle tension.
Dr. Culiechia noted in a November 13, 1979 report that Porrovecchio continued to experience pain at the back of the neck and headaches. According to this expert, plaintiff stated to him that more often than not cervical traction and physiotherapy worsened the symptoms for a short time. Dr. Culiechia again found no neurologic abnormality. Physical therapy was discontinued and a simple analgesic was prescribed. The physician recommended that plaintiff return to full and normal activity.
Finally, Dr. Culiechia concluded that no neurologic disorders contributed to plaintiff’s symptoms and he made no surgical recommendations. Plaintiff’s last visit to Dr. Culiechia was on November 13, 1979.
Porrovecchio testified that he had worn the neck collar for five or six weeks. He testified also that he had been placed in traction on a daily basis for approximately one week. His most serious complaints were with the “terrible headaches and blurry eyes”. According to plaintiff, prior to the accident he had no history of suffering from headaches and enjoyed fishing and trawling. Plaintiff stated that after the accident, because of frequent headaches, he “didn’t care to do anything”.
Plaintiff testified further that he suffered from headaches up to and including the June 1, 1981 trial date. He indicated that although he may not have a headache for a week, on other occasions the pain persisted for a “week or two”. According to Porrovecchio, he occasionally takes from six to twelve Tylenols a day. He described constant numbness in the back of the head.
Concerning his post-accident work habits, plaintiff testified that he continued to work as a longshoreman seven days a week just as he had before the accident. However, he was required to “. . . take off for two or three days” because he “couldn’t bear” the pain. Finally, Porrovecchio testified that he was physically able to resume activities approximately three or four months after the accident. He stated, however, that because of frequent headaches he did not engage in physical activities post-accident as he had prior to the injury.
When considering the medical evidence, we are of the opinion that the award is somewhat high. Nonetheless, the trial judge was obviously impressed with the continued and constant nature of plaintiff’s headaches and cervical pain. He apparently accepted the credibility of plaintiff’s testimony that he had continued to suffer with pain from the time of the September 20, *990 1979 accident until the date of trial. Under the circumstances, we cannot say the $18,-000.00 general damage award constitutes an abuse of discretion.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.